UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| UNITED STATES | CIVIL ACTION NO. 08-154 |
| VERSUS | U.S. DISTRICT JUDGE DEE D. DRELL |
| CORE L. MORRIS | U.S. MAGISTRATE JUDGE JAMES D. KIRK |

REPORT AND RECOMMENDATION

Before the court is defendant's motion to dismiss indictment due to the government's destruction of evidence, doc. # 55. The motion is referred to me for report and recommendation by the district judge. A hearing on the motion was held before me on August 13, 2008, at which Lt. Garrow of the special investigations unit at the U. S. Penitentiary in Pollock, Louisiana, testified.

Morris is charged with conspiracy to make a false statement and possess or attempt to possess cocaine in federal prison, possessing contraband in prison, conspiracy to possess with intent to distribute cocaine, and obstruction of a disciplinary hearing.

The incident reports introduced at the hearing[1] show that the defendant's prison telephone calls were monitored and it was learned by the government that Morris had requested that his brother, Daniel, and his brother's wife, Alicia, visit him at the prison and bring him cocaine. The visit was scheduled and Daniel

---

[1] Although two of the prison officials who authored the reports were not present at the hearing, the government and the defendant stipulated the officers would testify in accordance with the statements made in their incident reports.

and Alicia arrived.  The incident reports state that cameras in the visiting area showed Daniel and Alicia were acting suspiciously.  According to the incident reports, the prison authorities, therefore, cancelled the visit and requested permission to pat down Daniel and Alicia.  Daniel Morris was found to have three "balloons" of cocaine on his person.

Activity in the visiting area, like in most of the prison, is monitored by cameras.  Defendant correctly suggests that Daniel and Alicia would have been shown on the recording but that the recording was destroyed by the government.  The government admits that there was a digital recording, but that it was automatically recorded over after about three months.  In other, words the digital recording was not saved by being dubbed onto another media storage device.  Defendant asserts that the recording would have been exculpatory and, therefore, the indictment should be dismissed due to the government's destruction of the exculpatory evidence.

Defense counsel's argument is this: Contrary to the incident reports, the defendant will testify that the visit was not cancelled by the prison authorities before a visit with the defendant commenced, but in fact the visit had begun.  Yet the drugs were "tied" to Daniel and were not easily retrievable, so he could not have passed them or attempted to pass them to the defendant.  Thus, there was never any attempt or intent to pass the drugs to Core Morris.  The recording, counsel argues, would have

2

shown that, had Daniel intended to pass the drugs to Core, Daniel had plenty of time to reposition the drugs so that he could easily pass them to Core, but did not do so. Defense counsel also suggests that the tape "may have shown" that Daniel went or attempted to go to the restroom, but if he did, he apparently did not attempt to reposition the drugs while in the bathroom; therefore, he did not intend to pass the drugs to Core. Counsel also argues that the recording would have shown that no attempt to pass the drugs occurred.

The government argues that there is a restroom in the visitors' area and that Daniel could still later have repositioned the drugs, so the fact that he did not do so earlier proves nothing. More importantly, the government concedes the recording showed no attempt was made to pass the drugs to Morris and argues that the recording simply showed a non-event. Nothing happened on the recording which would have caused the government to save the digital recording by dubbing it. The government argues that (1) the recording was not exculpatory on its face, (2) is not evidence which cannot be obtained from any other source, and, in any event, (3) there is no evidence that the government acted in bad faith, citing <u>California v. Trombetta</u>, 104 S. Ct. 2528 (1984) and <u>Arizona v. Youngblood</u>, 109 S. Ct. 333 (1988).

Whatever duty the Constitution imposes on the States to preserve evidence, that duty must be limited to evidence that might

3

be expected to play a significant role in the suspect's defense. To meet this standard of constitutional materiality, evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means. California v. Trombetta, 467 U.S. 479, 488-489, 104 S.Ct. 2528, 2534 (1984). Moreover, the fundamental fairness requirement of the Due Process Clause does not impose on the police an undifferentiated and absolute duty to retain and to preserve all material that might be of conceivable evidentiary significance in a particular prosecution. Therefore, unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law. The presence or absence of bad faith by the police for purposes of the Due Process Clause must necessarily turn on the policemen's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed. Arizona v. Youngblood, 488 U.S. 51, 57-58, 109 S.Ct. 333, 337 (1988). Also, Illinois v. Fisher, 540 U.S. 544, 124 S.Ct. 1200 (2004).

As the court explained in Trombetta, the government has a duty only to deliver that evidence that might be expected to play a significant role in the defense. Further, the evidence must possess an exculpatory value that was apparent before the evidence was destroyed. Defense counsel's argument is that defendant was

indicted less than 90 days after the incident[2] and the recording was not destroyed until it was recorded over about 90 days later, according to the testimony of Lt. Garrow. Therefore, he posits, the government should have known to save the recording. He suggests this is especially true since the recording shows a crime – Daniel possessing contraband in the prison. I disagree. Even if it is true that Daniel was committing a crime at the time (a fact we certainly do not decide now), the recording would have only shown Daniel, not the cocaine alleged to have been hidden on him. Further, any exculpatory value of the recording for Core Morris would not have been apparent to the prison officials. They could not have foreseen defense counsel's novel, albeit logical, argument regarding the time Daniel had or didn't have to reposition the cocaine. In other words, I find that the recording's exculpatory value, if any, was not apparent before it was destroyed.

I also find that the evidence is available from other sources, namely the testimony of prison officials, and from Daniel, Alicia and Core Morris. While I recognize that, as defense counsel pointed out, a jury might be less likely to believe Daniel's, Alicia's and Core's testimony than the actual recording of the visit, the prison officials' testimony should indicate there was no attempt made to pass the drugs to the defendant (and it is not

---

[2] Daniel and Alicia's visit to Core Morris at USP-Pollock is alleged to have occurred on March 30, 2008. Core Morris and his co-defendants were indicted on May 14, 2008.

5

reasonable to believe that all the prison officials would testify falsely). Therefore, everything that the recording might have shown can be testified to by credible witnesses.

Finally, defendant has failed to show that the government acted in bad faith. Lt. Garrow testified that the recording was "recorded over" in the normal course of business. He explained that there was, to his knowledge, no conscious decision to record over the original recording or to intentionally destroy the recording. In this case the failure to save the recording does not even constitute negligence, much less bad faith. Garrow explained that the prison does not have the capacity to save all recordings and that the prison does not save recordings of "non-events". "If something doesn't happen, we don't just save it", he testified.

Therefore, defendant Core Morris has not carried his burden of proving the recording was exculpatory, was evidence which cannot be obtained from any other source, or that the government acted in bad faith by failing to preserve the recording.

For the foregoing reasons, IT IS RECOMMENDED that Core Morris' motion to dismiss the indictment, doc. #55, be DENIED.

**OBJECTIONS**

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.P. 72(b), the parties have ten (10) business days from service of this Report and Recommendation to file specific, written objections with the clerk of court. A party may respond to another

6

party's objections within ten (10) days after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the district judge at the time of filing. Timely objections will be considered by the district judge before he makes his final ruling.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT UPON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UN-OBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED in chambers, in Alexandria, Louisiana, on this the 14th day of August, 2008.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE